UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

ALEXANDER JOYNER,                             :         Index. No. 16-cv-3327

            Plaintiff,                          :         **COMPLAINT**

      -against-                                     :         **Jury Trial Demanded**

                                                           :
UNDERCOVER OFFICER NO. 155,
                                                           :
            Defendant.
-------------------------------------------------------X

       Plaintiff ALEXANDER JOYNER ("JOYNER" or "Plaintiff"), by his attorneys, the LAW OFFICES OF JOEL B. RUDIN, P.C., complaining of the Defendant, respectfully alleges, upon information and belief, as follows:

## NATURE OF ACTION

       1.     This is a civil action, pursuant to 42 U.S.C. §§ 1983 and 1988 and New York State law, seeking monetary damages for Plaintiff, ALEXANDER JOYNER, for his wrongful arrest, prosecution, conviction, and three-year imprisonment, on a fabricated gun possession charge in Queens, New York. The only "evidence" against JOYNER was the falsified account of the Defendant: UNDERCOVER OFFICER NO. 155 ("UC 155"). In overturning Plaintiff's conviction and dismissing the indictment, the New York State Appellate Division found that UC 155's testimony was incredible and that the weight of the evidence favored Plaintiff's acquittal.

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

       2.     This action arises under 42 U.S.C. §§ 1983 and 1988.

       3.     Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, as Plaintiff's causes of action arise under the laws of the United States.

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims took place in the Eastern District of New York.

5. This action has been commenced within one year and ninety days of the accrual of Plaintiff's causes of action.

6. Plaintiff has duly complied with all conditions precedent to the commencement of this action.

## THE PARTIES

7. Plaintiff, ALEXANDER JOYNER, is a citizen and resident of the State of New York and of the United States, and resides within the Eastern District of New York, in the County of Queens.

8. Defendant, UNDERCOVER OFFICER NO. 155 ("UC 155"), was at all relevant times an officer employed by the New York City Police Department ("NYPD"), acting within the scope of his authority and under color of State law. He is named here in his individual capacity.

## THE FACTS

**A. Plaintiff's Wrongful Arrest and Indictment**

9. On the evening of May 21, 2010, Plaintiff ALEXANDER JOYNER attended a gathering of friends in the Bronx in remembrance of a deceased friend of his.

10. At the time, JOYNER was 32 years old and had no criminal record.

11. While JOYNER was driving home, he received a call from another friend, who invited him to come to a party at an after-hours club located at 113-10 Sutphin Boulevard in Jamaica, Queens.

12. Plaintiff accepted the invitation and drove to the club, arriving shortly after 3 a.m.

13. Before being allowed into the club, JOYNER had to pass a thorough security check, which included a careful pat-down.

14. Security personnel at the party found no weapon on JOYNER, and allowed him to enter.

15. As many as 100 people were present at the club.

16. Also present were undercover police officers, including the Defendant, UNDERCOVER OFFICER NO. 155.

17. The undercover police officers were investigating prostitution that was allegedly occurring there.

18. While at the party, UC 155 saw a man, apparently acting as a private security guard, walking around the party carrying a holster that appeared to hold a handgun.

19. JOYNER was not engaging in any activities with the women who were present at the party, but was hanging out with the male friend who had invited him.

20. Suddenly, uniformed police officers entered the room and announced a raid.

21. Many of the partygoers began to panic and scatter in different directions; some discarded contraband.

22. While the police officers were securing the area, UC 155 allegedly saw a small-caliber handgun near a window air-conditioning unit in the room.

23. Police ordered the partygoers in the room, including JOYNER, to sit on the floor, which they did.

24. UC 155 told Detective Michael Wallen, who was present for the raid, that there was a gun by the air-conditioning unit.

25. UC 155 signaled Wallen to arrest JOYNER for possession of this handgun.

26. He told Wallen that he had seen JOYNER take this weapon from his waistband and secrete it by the air-conditioning unit.

27. Solely based upon UCC 155's allegation, JOYNER was arrested at the club..

28. The private security guard whom UC 155 had observed with a gun holster before the raid was seen by police after the raid carrying an empty holster. No gun was found on the security guard's person.

29. Police detained the man for several hours, but did not charge him with weapons possession.

30. Police never tried to recover fingerprints or DNA from the gun they seized.

31. In fact, they mishandled the evidence so that reliable such evidence could not be recovered.

32. Although UC 155 was required by the NYPD to keep a memo book that recorded all significant events and observations, including his alleged observation of JOYNER discarding the gun, he lost or misplaced his memo book entries concerning this incident.

33. Based on UC 155's false account of JOYNER possessing the gun, Detective Wallen prepared police paperwork repeating this false allegation and signed a sworn felony complaint, dated May 22, 2010, charging JOYNER with two counts of Criminal Possession of a Weapon in the Second Degree.

34. JOYNER was arraigned on this Criminal Court complaint on or about May 23, 2010.

35. Thereafter, UC 155 falsely informed the Queens County District Attorney's Office that he had seen JOYNER reach into his pants, pull out a gun, attempt to throw it out a window, pick it up off the floor, and then conceal it near the air-conditioning unit.

36. US 155 also told the D.A.'s Office that JOYNER caught the gun when it bounced off the window, before it could fall to the floor.

37. Based upon the manufactured allegation of UC 155, JOYNER, on November 4, 2010, was indicted by a grand jury on a top charge of criminal possession of a firearm with intent to use, a "C" felony for which he faced a potential sentence of 15 years in prison.

### B. Plaintiff's Trial and Conviction

38. JOYNER's trial began on January 20, 2012, in the Supreme Court, Queens County.

39. The People's case against JOYNER was based entirely on the false testimony of UC 155 that he had seen JOYNER try to throw the gun out the window, catch it, and then hide it near the air-conditioning unit.

40. On February 2, 2012, after deliberating for two days, the jury convicted JOYNER of two counts of criminal possession of a weapon in the second degree.

41. The court thereafter sentenced JOYNER to consecutive five-year terms in State prison, and JOYNER was transferred to State Prison to serve his sentence.

### C. The Appellate Division's Reversal of Plaintiff's Conviction

42. On March 25, 2015, the Appellate Division, Second Department, reversed JOYNER's conviction and dismissed the underlying indictment on the ground that the verdict was against the weight of the evidence. *See People v. Joyner*, 126 A.D.3d 1002 (2d Dept. 2015).

43. The Appellate Division relied on the following: (a) UC 155 could not produce his memo book documenting the events relating to JOYNER's arrest; (b) there were contradictions between UC 155's testimony and that of another detective; and (c) it was unbelievable that Plaintiff threw the gun against a window and it simply bounced back into his hands.

44. Indeed, the Court found that UC 155's account of the gun bouncing off the glass was "incredible and unbelievable, that is, impossible of belief because it is manifestly untrue, physically impossible, contrary to experience, or self-contradictory…."

45. On or about March 26, 2015, Plaintiff was released from State prison.

D. **Plaintiff's Damages and Injuries**

46. Plaintiff's damages and injuries include, but are not limited to:

   a. His loss of liberty from the date of his conviction through his release from custody, a total of approximately 38 months;

   b. His past and future mental and emotional distress due to his wrongful arrest, prosecution and conviction for a crime he did not commit and his wrongful imprisonment for such crime;

   c. His loss of the services, society, companionship, and consortium with his family members and friends; and

   d. His loss of employment income, and diminution of future earning ability, due to his arrest, prosecution, and imprisonment, in an amount to be determined by an economic expert.

## FIRST CAUSE OF ACTION

(42 U.S.C. § 1983; Denial of Due Process and a Fair Trial
Under the Fifth, Sixth, and Fourteenth Amendments;
Defendant UC 155)

47. Plaintiff repeats and re-alleges each and every allegation contained in ¶¶ 1 through 46 of this Complaint.

48. At all times mentioned herein, UC 155 was acting under color of State law.

49. Defendant UC 155 knowingly, willfully, and intentionally deprived Plaintiff of his right to due process and a fair trial, guaranteed to him by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, by deliberately manufacturing false evidence against Plaintiff which he knew was likely to influence prosecutors and a jury, and by causing that evidence to be forwarded to prosecutors at the Queens District Attorney's Office.

50. This fabricated evidence was the sole basis for, and directly and proximately caused, Plaintiff's arrest, prosecution, indictment, and conviction, and caused all his resultant damages.

51. Accordingly, UC 155 is liable to Plaintiff under 42 U.S.C. § 1983 for compensatory and punitive damages.

## SECOND CAUSE OF ACTION

(42 U.S.C. § 1983; Malicious Prosecution Under the Fourth, Fifth and Fourteenth Amendments; Defendant UC 155)

52. Plaintiff repeats and re-alleges each and every allegation contained in ¶¶ 1 through 51 of this Complaint.

53. Defendant UC 155 knowingly, willfully and intentionally initiated, or caused the initiation and the continuation, of Plaintiff's criminal prosecution, and thereby caused him to lose his liberty.

54. He did so with malice, and without probable cause.

55. The prosecution was resolved in favor of Plaintiff.

56. Defendant's conduct was reprehensible and shocking to the conscience.

57. Defendant's conduct violated Plaintiff's interest in being free of unreasonable search and seizure pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, as well as his right to substantive and procedural due process under the Fifth and Fourteenth Amendments.

58. By virtue of the foregoing, UC 155 is liable to Plaintiff under 42 U.S.C. § 1983 for compensatory and punitive damages.

## THIRD CAUSE OF ACTION

(42 U.S.C. § 1983; False Arrest; Defendant UC 155)

59. Plaintiff repeats and re-alleges each and every allegation contained in ¶¶ 1 through 58 of this Complaint.

60. At all times mentioned herein, UC 155 was acting under color of State law.

61. UC 155 deprived Plaintiff of his rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free of unreasonable search and seizure and to his liberty by detaining, searching, arresting, confining, causing the confinement, and/or continuing the confinement of Plaintiff without probable cause or any other privilege to do so.

62. Plaintiff was conscious of his confinement.

63. Plaintiff did not consent to his confinement.

64. UC 155 deprived Plaintiff of his rights intentionally, knowingly, willfully, recklessly, and/or with deliberate indifference to the lawfulness of his conduct.

65. Accordingly, UC 155 is liable to Plaintiff under 42 U.S.C. § 1983 for compensatory and punitive damages.

## DAMAGES DEMAND

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

a. For compensatory damages of not less than $10 million;

b. For punitive damages against the individual defendants of not less than $5 million;

c. For reasonable attorneys' fees, together with costs and disbursements, pursuant to 42 U.S.C. § 1988 and the inherent powers of this Court;

d. For pre-judgment interest as allowed by law; and

e. For such other and further relief as this Court may deem just and proper.

DATED:   New York, New York
         June 21, 2016

                                        LAW OFFICES OF JOEL B. RUDIN, P.C.

                                        _____
                                        JOEL B. RUDIN, ESQ.
                                        HARAN TAE, ESQ.
                                        600 Fifth Avenue, Tenth Floor
                                        New York, New York 10020
                                        (212) 752-7600
                                        Email: jbrudin@rudinlaw.com

                                        *Attorneys for Plaintiff*

TO:   Undercover Officer No. 155
      Corporation Counsel of the City of New York

9